**BURGUAN CLARKE LAW OFFICE, PLLC**
2432 West Peoria Avenue, Suite 1003
Phoenix, Arizona 85029
Telephone (623) 266-7035
Fax (623) 266-1267
azlawpractice@gmail.com
Jessica J. Burguan Bar no. 026208
Jacob Faussette- Bar no. 027505

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **PAUL JUNIOR TACY, an individual,** | Case No: |
| Plaintiff, | |
| v. | |
| **ARIZONA PUBLIC SERVICE COMPANY an Arizona corporation;** | **COMPLAINT** (Demand for Trial by Jury) |
| Defendant. | |

Plaintiff, Paul J. Tacy, through counsel undersigned, for his Complaint against Defendant, alleges as follows:

**JURISDICTION**

1. Plaintiff, Paul J. Tacy (hereinafter, "Tacy"), is a resident of Maricopa County, Arizona.

2. Defendant, Arizona Public Services Company (hereafter, "APS") is an Arizona Corporation doing business in Arizona.

3. APS is a subsidiary of Pinnacle West Capital Corporation.

1

4.      APS operates the Palo Verde Nuclear Generation Plant.

5.      APS generates, sells, and delivers electricity and energy-related products and services to wholesale and retail customers in the southwestern United States.

6.      APS employs more than 15 employees.

7.      Defendant has caused events to occur within Maricopa County, Arizona, out of which the claims that the subject of this Complaint arose.

8.      This action arises under 42 U.S.C. § 5851, known as the Energy Reorganization Act (or the Atomic Energy Act of 1954).

9.      This court has jurisdiction over the persons and subject matter of this Complaint.

**GENERAL ALLEGATIONS**

10.     Tacy was hired by APS on or about November, 19 1984.

11.     Tacy was originally hired as a Quality Assurance Inspector for the Nuclear Assurance Department (hereinafter "NAD") at Palo Verde Nuclear Generation Station (hereinafter, "PVNGS").

12.     As a Quality Assurance Inspector, Tacy was responsible for the inspection of electrical, instrumentation and controls and civil & general, in all three Nuclear Units at PVNGS.

13.     While at NAD, Tacy found several errors and safety violations noted in the Code of Federal Regulations (hereinafter, "CFR"), specifically 10 CFR Part 50, Appendix B "Quality Assurance Criteria for Nuclear Power Plants and Fuel Reprocessing Plants".

14.     Tacy submitted all of his findings to his supervisors, who either did not know the CFR violations, or cared to ignore same.

15.     Specifically, Tacy filed Differing Professional Opinions (hereinafter, "DPO's"): 95-002, 95-004, 96-01, 96-02, 96-04 and 96-05.

16. As a result of the above, APS issued the following Management Issue Tracking Resolutions (hereinafter, "MITR"): 95-32 and 97-003.

17. Unsatisfied with APS's response to his DPO's, Tacy filed the following United States Nuclear Regulatory (hereinafter, "USNRC") Allegations: RIV-95-A-0142, RIV-97-A0032, RIV-97-A-0073 and RIV-97-A-0111.

18. Due to Tacy's numerous reports and safety concerns, APS management decided to move Tacy from NAD to his choice of either the Materials Warehouse, or the Materials and Technical Engineering (hereinafter "M&TE") Calibration Lab.

19. Tacy was moved from NAD to the Materials Warehouse at APS in or about September, 1997.

20. Tacy was moved due to consistent inaccuracies found at the Nuclear Facility, specifically within NAD.

21. Although Tacy was now working in the Materials Warehouse, Tacy noted several CFR violations being committed by the Materials Warehouse.

22. As before, Tacy brought many of these safety violations to the attention of his supervisors and APS management.

23. Between 1997 and 2008, Tacy filed five (5) DPO's, fifteen (15) CRDR's (Condition Report/Disposition Report, hereinafter, "CRDR"), fourteen (14) PVAR's (Palo Verde Action Requests, hereinafter, "PVAR") and issued five (5) USNRC Allegations.

24. As a result of the numerous documents filed by Tacy, APS management issued several Corrective Action Reports (hereinafter, "CRAI's"), remedying the violations, specifically noting several safety concerns brought to their attention by Tacy.

25. On or about September 7, 2007, Tacy received an "Oral Reminder" from APS supervisors for getting angry in a Quality Control Warehouse meeting on August 30, 2007.

26. As a result of the "Oral Reminder", Tacy attended and graduated his required anger management course.

27. APS uses a progressive discipline system, whereby an employee receives an oral warning (an "Oral Reminder"), then a written warning and either an advanced corrective discipline (suspension) or termination.

28. Prior to his termination, Tacy only received an "Oral Reminder" from APS.

29. In or about February, 2008, the Materials Warehouse received a new supervisor, Robert Mark Quesinberry (hereinafter, "Quesinberry") (a former Materials Warehouse Inspector and colleague of Tacy).

30. As the new Materials Warehouse supervisor, Quesinberry was specifically briefed by Employee Concerns regarding Tacy's filing of numerous CFR violation and safety complaints (DPO's: 06-09, 07-10, 08-01 and 08-03; and USNRC Allegations: RIV-95-A-0032 and RIV-95-A-0142), filed through the APS chain of command.

31. In or about April, 2008, Tacy also filed DPO 08-05.

32. On or about July 22, 2008, Tacy and re-hired colleague J.D. Scott engaged in a conversation.

33. Same conversation was physically observed by Rob Smith, audibly observed by Dennis Steindam and never observed by Kitty Phillips; all colleagues of Tacy.

34. On or about July 28, 2008, Quesinberry questioned both Dennis Steindam and Kitty Phillips regarding the conversation between Tacy and J.D. Scott.

35. Based on the information received from Dennis Steindam and Kitty Phillips, Quesinberry, with approval from APS management, elected to begin Tacy's termination process.

36. Quesinberry had Tacy escorted from APS property on July 30, 2008.

37. APS offered a Severance Package to Tacy in or about August 2008.

4

38. Tacy did not elect to take APS's Severance Package.

39. Tacy was finally terminated from APS on or about August 22, 2008.

40. In or about September, 2008, Tacy appealed his termination from APS.

### COUNT I: APS VIOLATED THE FEDERAL WHISTLEBLOWER PROTECTION STATUTE UNDER THE ENERGY REORGANIZATION ACT

41. Tacy realleges each and every allegation contained in this Complaint as if fully set forth herein.

42. APS is a licensee of the Nuclear Regulatory Commission.

43. APS took adverse employment actions against Tacy because Tacy filed DPO's: 08-01, 08-03 and 08-05; of which DPO 08-05 was reported to the USNRC as Allegations RIV-2008-A-0068 (ultimately becoming Allegations RIV-2008-A-0104, 114 and 0142).

44. Tacy's immediate supervisors, including Quesinberry and General Manager Terry Radtke, were aware of Tacy's submission of DPO 08-05 and USNRC contact regarding same, because Tacy sent two e-mails from his APS email account, dated May 10, 2008 and May 17, 2008, to USNRC at "R4allegations@NRC.GOV".

45. Due to Tacy filing USNRC Allegation RIV-2008-A-0068, the USNRC inspected APS's documents and procedures; questioning management relating to issues presented in DPO 08-05.

46. In less than ninety (90) days from Tacy contacting the USNRC, APS management escorted Tacy off APS property, initiating Tacy's termination.

47. APS acted in bad faith when it retaliated against Tacy for engaging in protected activities under the Energy Reorganization Act by filing documents with the USNRC, resulting in an USNRC investigation of APS's materials quality receipt and inspection.

48. As a result of engaging in protected activity, Tacy was terminated by APS.

49. Tacy suffered harm as a result of his termination of employment from APS, as Tacy is continuously "Blacklisted" by APS (being denied on many nuclear facility "Quality Specialist/Inspector" applications, for which Tacy is exceptionally qualified) and unable to find employment in his specialized field.

50. In or about September 2008, Tacy began the USNRC appeal process regarding his termination at APS.

51. On or about April 23, 2012, the USNRC's Allegation Review Board completed its final review and issued its final order regarding Tacy's allegations surrounding his termination at APS (attached hereto as "Exhibit A").

## DEMAND FOR TRIAL BY JURY

52. Tacy demands trial by jury.

WHEREFORE, Tacy prays for damages against Defendant as follows:

A. Actual, punitive and consequential damages; and liquidated damages, including, but not limited to, back wages including interest at the legal rate and fringe benefits;

B. Reasonable Attorneys' fees;

C. Costs of litigation; and

D. Any other relief the Court deems appropriate

DATED this 23rd day of May, 2012.

                                    **BURGUAN CLARKE LAW OFFICE, PLLC**

                                    /s/ Jacob Faussette
                                    Jacob Faussette
                                    Attorneys for Plaintiff

1 **ORIGINAL** of the foregoing
Electronically filed this
2 23rd day of May, 2012, with:

3 Clerk of U.S. District Court
401 West Washington Street, Suite 130
4 Phoenix, Arizona  85003